UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHARLES RIVER LABORATORIES, )
INC., )
 )
              Plaintiff, )
 )
   v. ) Case No. 14-cv-1170
 )
NADEEM BEG and ) Judge John W. Darrah
HUNTINGDON LIFE SCIENCES, INC., )
 )
             Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles River Laboratories, Inc. has brought this action against Defendants Nadeem Beg and Huntingdon Life Sciences, Inc. ("HLS"). Plaintiff's six-count Complaint asserts one count against HLS for tortious interference with contract and five counts against Beg: (1) breach of contract; (2) misappropriation of trade secrets, in violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* ("ITSA"); (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA"); (4) violation of Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ("SCA"); and (5) breach of fiduciary duties. Plaintiff has moved for a preliminary injunction. For the reasons provided below, Plaintiff's Motion for Preliminary Injunction is denied.

### BACKGROUND

The following facts are taken from the Complaint, the submitted exhibits, and testimony from the preliminary injunction hearing. Plaintiff provides pre-clinical and clinical laboratory services to pharmaceutical and biotechnology companies, governmental agencies, and academic institutions to accelerate their research and drug development efforts. HLS, an international

contract research organization, offers pre-clinical services to pharmaceutical, biopharmaceutical, crop protection and chemical companies and is a competitor of Plaintiff.

Beg began working for Plaintiff in 1997 as a sales representative and served as an account manager from 2009 through 2013. As an account manager, Beg sold Plaintiff's services to customers in Plaintiff's Midwest territory, which also included parts of Canada. Beg signed an employment agreement (the "Agreement") with Plaintiff that restricted use of Plaintiff's confidential information and also contained a non-competition and non-solicitation clause. In early December 2014, HLS offered Beg the sales position of director, business development, with responsibility for states primarily in the Midwest and portions of Canada.

On January 3, 2014, Beg resigned from his employment with Plaintiff. In the days before he left, Beg accessed two of Plaintiff's databases and downloaded confidential and proprietary documents onto a personal portable hard drive. He also created spreadsheets that contained sales information and contacts within Plaintiff's Midwest territory. Using his Plaintiff-issued email account, Beg sent certain documents to his personal email account regarding contacts and business proposals, including a potential business opportunity for two vaccine studies. He did not disclose these actions to Plaintiff. HLS was not aware of Beg's actions and did not request that he bring with him any information or documents from Plaintiff. On January 6, 2014, Beg began working for HLS, including identifying existing and prospective clients for HLS and contacting people to set up meetings to discuss HLS's capabilities.

On February 18, 2014, Plaintiff filed its Complaint against Defendants. On February 21, 2014, Plaintiff moved for a preliminary injunction, seeking to: prohibit Beg from disclosing any confidential information or property of Plaintiff; bar Beg from continuing to work

for HLS; require Beg to comply with his Agreement with Plaintiff; prohibiting Defendants from deleting relevant electronic documents; and permitting Plaintiff's forensic experts to copy and inspect Defendants' electronic devices and media. On the same day, HLS voluntarily removed Beg from his position, instructed him to cease performing any work and cut off access to his HLS email account and its systems. Beg has not worked for HLS since February 21, 2014. Defendants also turned over all computers and devices that could contain Plaintiff's documents to a third-party forensic firm. HLS further agreed to pay one-half of the forensic firm's fees in reviewing the devices and computers and deleting any of Plaintiff's information.

On April 16-17, 2014, this Court held a preliminary injunction hearing, during which witnesses for all parties testified, including Beg. Both parties filed post-hearing briefs.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008) ("a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it") (internal citations omitted). In determining whether a preliminary injunction is warranted, the district court conducts a two-step analysis: a threshold phase and a balancing phase. *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1085-86.

To meet the threshold phase, a party must show that: (1) it will suffer irreparable harm if the preliminary injunction is denied; (2) it has no adequate remedy at law; and (3) its claims have "some likelihood of succeeding on the merits." *Id.* at 1086 (citing *Ty, Inc. v. Jones Grp., Inc.*,

237 F.3d 891, 895 (7th Cir. 2001)). "If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction." *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086 (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

If the moving party satisfies the threshold phase, the court next analyzes the balance of harms. *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012). The court "must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* (internal citations omitted). The court is also obligated to consider the public interest, "meaning the consequences of granting or denying the injunction to non-parties." *Abbott Labs.*, 971 F.2d at 11-12. The court sits "as would a chancellor in equity" and weighs all the factors "in deciding whether to grant the injunction, seeking at all times to 'minimize the costs of being mistaken.'" *Id.* at 12 (quoting *Am. Hosp. Supply Corp. v. Hosp. Products Ltd.*, 780 F.2d 589, 593 (7th Cir. 1986)).

## ANALYSIS

*No Adequate Remedy at Law and Risk of Irreparable Harm*

A preliminary injunction "is an equitable remedy warranted only when the plaintiff has no adequate remedy at law, such as monetary damages." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998). Here, Plaintiff has not carried its burden of a clear showing that it will suffer irreparable harm without a preliminary injunction. Instead, the record supports that any injury arguably suffered by Plaintiff will be compensable by money damages.

4

As Plaintiff admits in its post-hearing brief at page 7, the parties have stipulated that Beg will not use or disclose Plaintiff's confidential information as defined in the Agreement. Defendants, as mentioned above, have already turned over any electronic devices that could have contained Plaintiff's confidential information for forensic inspection. Furthermore, as demonstrated at the hearing, it is undisputed that HLS has not received or used any of Plaintiff's confidential information. (Hearing Tr. at 160-161, 183.)

Faced with a lack of specific evidence of harm, Plaintiff argues that Beg will "inevitably" rely on Plaintiff's trade secrets in his work for HLS. However, Plaintiff has not identified any trade secrets that Beg possesses except for customer lists and contact information. As David Grewcock, HLS's head of sales for North America, testified, that type of customer and contact information is readily available to the public through third-party vendors. (Hearing Tr., 182:16-183:17). As such, it is not considered protectable. *See, e.g., U.S.A. Glas, Inc. v. Webb*, 94 C 0958, 1995 WL 59252 (N.D. Ill. Feb. 11, 1995) (customer information is not protectable where "it has not been treated as confidential and secret by the employer, was generally available to other employees and known by persons in the trade, could easily be duplicated by reference to telephone directories or industry publications, and when the customers on such lists did business with more than one company.") (internal citations omitted).

Plaintiff also argues that Beg poses a risk of irreparable harm because he emailed some companies after he started working for HLS. As Grewcock testified, Beg emailed existing HLS customers as HLS's new representative, and none of those emails contained any information that was confidential or proprietary to Plaintiff. (Hearing Tr. at 141-142, 188.)

5

Plaintiff has failed to make a clear showing of irreparable harm that it will suffer without a preliminary injunction. Moreover, Plaintiff's claims center on Beg's alleged breach of contract and alleged misuse of Plaintiff's information, and it has an adequate remedy at law for its alleged injuries. Since Plaintiff has failed to satisfy this threshold requirement, the Court must deny the preliminary injunction. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1086. For this reason, it is unnecessary to analyze whether Plaintiff's claims are likely to succeed or weigh the balance of harms.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction [6] is denied. Plaintiff's Motion for Expedited Discovery [8] is also denied.

Date: August 19, 2014

JOHN W. DARRAH
United States District Court Judge